UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SRS ENERGY, INC., and CLEANTECH BIOFUELS, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 4:08CV285 HEA |
| BIO-PRODUCTS INTERNATIONAL, INC., et al., | ) ) ) ) | |
| Defendants. | ) | |

## **OPINION, MEMORANDUM AND ORDER**

This matter is before the court on Defendants' Motion to Quash for Lack of Personal Jurisdiction, and to Dismiss or Transfer for Improper Venue and/or Forum Non Conveniens, [Doc. No. 6] and Defendants' Motion to Compel Arbitration and Stay Action Pending Completion of Binding Arbitration, [Doc. No. 15]. The parties have fully briefed these issues and on May 14, 2008, this Court conducted a hearing pursuant to the parties' request for oral argument. For the reasons set forth below, the Motion to Quash is granted; the Motion to Compel Arbitration and to Stay is granted and the Motion to Dismiss or Transfer is denied as moot.

## Facts and Background[1]

Plaintiffs brought this action in the Circuit Court for the County of St. Louis, Missouri on January 9, 2008 against Defendants alleging the following claims: Count I-Tortious Interference With a certain License Agreement against Defendants Clean Earth Solutions, Inc., (CES), Eley, Blatz, and Campos; Count II-Fraud in the Inducement against Defendants Bio Products International, Inc. and Eley; Count III-Civil Conspiracy against all Defendants, and Count IV- Rescission. Defendants removed the matter to this Court based on the Court's diversity of citizenship jurisdiction. 28 U.S.C. § 1332 and 28 U.S.C. § 1441.

The Petition sets forth, *inter alia*, the following background facts:

On August 17, 2005, Plaintiff SRS entered into a Technology License Agreement with Bio-Products. Under the License Agreement, Bio-Products granted Plaintiffs the exclusive right to utilize certain proprietary technology and patented processes that convert municipal solid waste into "cellulosic biomass" (the Technology) for the purpose of generating fuel grade Ethanol. Bio-Products also licensed the Technology to other companies such as CES, who were authorized to

---

[1] This recitation of facts is set forth for the purposes of these motions only and is not intended to relieve any parties of the necessary proof of said facts in later proceedings.

use the cellulosic biomass for purposes of converting it into non-Ethanol bio-fuels. Plaintiff CleanTech held the exclusive Ethanol rights in the United States.

Defendant Eley controlled Bio-Products and was Plaintiffs' contact relating to the Technology and the License Agreement.

After entering into the License Agreement, SRS sought to commercialize its Exclusive Ethanol Rights. It merged with CleanTech, retained an engineering company to validate the Technology, raised capital, licenced compatible technology necessary to convert the cellulosic biomass into Ethanol and pursued various other compatible business relationships. From August 2005 to the present, Plaintiffs continuously shared their business developments and opportunities with Eley and included him in all major discussions and strategic decisions concerning the use of the Technology and the commercialization of the Exclusive Ethanol Rights.

Shortly after Plaintiffs entered into the License Agreement with Bio-Products, Defendants Eley, Blatz and Campos founded CES. Plaintiffs believe they founded CES for purposes of licensing and using the Technology to generate non-Ethanol bio-fuels.

On June 1, 2006, Defendant Eley came to St. Louis to meet with Plaintiffs and encouraged them to enter into a joint venture or other business relationship with CES. The parties were unable to reach a definitive agreement because, according to

Plaintiffs, the CES Defendants (CES, Eley, Blatz, and Campos) insisted that Plaintiffs contribute some or all of their Exclusive Ethanol Rights as part of the proposed joint venture. Plaintiffs rejected this insistence and the negotiations ended.

On April 13, 2007, Bio-Products and Eley were sued in the California Superior Court by one of Bio-Products' other licensees, World Waste Technologies, Inc. World Waste Technologies is believed to hold the licence to use the Technology for purposes of converting the cellulosic biomass into paper products. The suit alleged, among other things, breach of contract.

Further according to the Petition, just prior to the World Waste Litigation, Eley approached Plaintiffs seeking their assistance and cooperation in helping he and Bio-Products put together a proposed settlement in hopes of averting the World Waste litigation. Under the settlement proposal, Plaintiffs would grant Bio-Products a limited sub-license of their Exclusive Ethanol Rights restricted to several specifically identified sites in the United States. Bio-Products and Ely represented they would then use this limited sub-license as a bargaining chip in settling the dispute with World Waste. Plaintiffs allege that they relied on these representations and granted the World Waste Sub-License as requested and executed a sub-license agreement.

Plaintiffs allege that they later learned that neither Eley nor Bio-Products ever intended to use the World Waste Sub-Licence as represented and in fact did not use it as represented.  Rather, Plaintiffs believe that Eley and Bio-Products intended to grant and did in fact grant and/or transfer the Sub-License to CES and/or the CES Defendants.

In September, 2007, Eley again met with Plaintiffs in an attempt to forge a cooperative relationship between CES and Plaintiffs whereby the parties would work together and share the costs of validating the Technology.  Plaintiffs agreed and organized a November, 2007 meeting between Plaintiffs, their engineering firm and the CES Defendants.  At the meeting, all of the discussions and proposals set forth by the CES Defendants included their securing some or all of Plaintiffs' Exclusive Ethanol Rights.  Plaintiffs denied this proposal but agreed to engage in future dialogue regarding ways in which the parties could cooperate to develop and validate the Technology.  In late November, 2007, Defendants Blatz and Campos initiated a conference call with Plaintiffs in a final effort to secure the Exclusive Ethanol Rights.  Plaintiffs again refused and the negotiations ended.

Plaintiffs allege that they believe Defendants Blatz, Campos and the other CES Defendants had already conspired with Eley and Bio-Products regarding one or more methods for securing Plaintiffs' Exclusive Ethanol Rights should the final

negotiations fail.

Finally Plaintiffs allege that on December 31, 2007, the CES Defendants conspired to cause, and did cause, Eley and Bio-Products to wrongfully and unlawfully purport to terminate the License Agreement with Plaintiffs.

Plaintiffs allege in Count I that the CES Defendants tortiously interfered with the License Agreement and Plaintiffs' Exclusive Ethanol Rights by inducing and/or causing Eley and Bio-Products to wrongfully and unlawfully terminate the License Agreement, without just cause, excuse or other justification. In Count III, Plaintiffs allege that the CES Defendants and Bio-Precuts undertook an unlawful and fraudulent scheme designed to deprive Plaintiffs of the Exclusive Ethanol Rights both under the auspices of helping Eley and Bio-Products avert the World Waste Litigation and by tortuously interfering with the License Agreement.

## Motion to Quash Service of Summons

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff "must state sufficient facts in the complaint to support a reasonable inference that [the defendants] can be subjected to jurisdiction within the state." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004), quoting *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 259 (8th Cir. 1974). A party may rely on affidavits, exhibits, or other evidence to make a prima facie case of jurisdiction. *Romak USA,*

*Inc. v. Rich*, 384 F.3d 979, 983 (8th Cir. 2004). "The party seeking to establish the court's *in personam* jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir.2003).

> Missouri's long-arm statute provides, in relevant part, as follows:
>
> Any ... corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such ... corporation ... to the jurisdiction of the courts of this state as to any cause of action arising from the doing of such acts:
> *2 (1) The transaction of any business within this state;
> (2) The making of any contract within this state;
> (3) The commission of a tortious act within this state;
> * * *

Mo.Rev.Stat. § 506.500.1 (2007). Missouri's long-arm statute authorizes jurisdiction to the extent permitted by the Due Process clause, and thus the Court need only determine that the assertion of jurisdiction satisfies due process. *Romak*, 384 F.3d at 984 (citation omitted).

To satisfy due process, a defendant must have sufficient minimum contacts with the forum state such that the assertion of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Id.* See also *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 291-92 (1980). There must be some act by which the

defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Epps*, 327 F.3d at 647-48, citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). See also *Asahi Metal Indus. Co. v. Superior Court of California, Solano County*, 480 U.S. 102, 109-12 (1987). The defendant's contacts must be more than "random, fortuitous, or attenuated." *Id.*, citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Personal jurisdiction may be general or specific. Specific jurisdiction exists when a cause of action arises out of or is related to a defendant's contacts with the forum state; when the cause of action does not arise out of defendant's contacts, general jurisdiction exists, but only if the defendant's contacts with the state are systematic and continuous. *Epps*, 327 F.3d at 648, citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8-n.9 (1984). A five-factor test evaluates the sufficiency of the defendant's contacts: (1) the nature and quality of the defendant's contacts with the forum state, (2) the quantity of the contacts, (3) the relation of the cause of action to the contacts, (4) the interest of the forum state in providing a forum for its residents, and (5) the convenience of the parties. *Id.*, citing *Burlington Indus. v. Maples Indus., Inc*, 97 F.3d 1100, 1103 (8th Cir. 1996). The first three factors are given significant weight. *Romak*, 384 F.3d at 984.

"A single tortious act is sufficient to support personal jurisdiction consistent with due process standards." *Peabody Holding Co., Inc. v. Costain Group PLC*, 808 F.Supp. 1425, 1437 (E.D.Mo.1992). However, "[a] plaintiff may not invoke tortious long-arm jurisdiction consistent with due process where the nonresident defendant had no contact with Missouri besides the extraterritorial acts having consequences in Missouri." *Id*. *R & K Lombard Pharmacy Corp. v. Medicine Shoppe Intern., Inc.* 2008 WL 648509, 5 (E.D.Mo.) (E.D.Mo.,2008)

Defendants Blatz and Campos move to quash service of summons served on them by Plaintiffs for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. The sole claims against these defendants are the claims for tortuous interference with the Licence Agreement and civil conspiracy. Plaintiffs do not state a claim against them for fraud in the inducement of the Sub-Licence agreement.

Plaintiffs do not dispute that Defendants Blatz and Campos have never been to Missouri in any capacity; own no property in Missouri; hold no bank accounts in the State of Missouri. Plaintiffs assert that this Court has specific jurisdiction over Defendants Blatz and Campos and that the exercise of jurisdiction over these non-resident Defendants is proper because the injury allegedly suffered by Plaintiffs occurred in Missouri.

Plaintiffs argument, however is based upon a connection with the State of Missouri by these two defendants which is far too tenuous. As the evidence presented to the Court establishes, Defendant Campos only had six telephone conversations with Plaintiffs' representative in the State of Missouri with respect to the joint venture negotiations. There is no evidence that Blatz had even that amount of contact with the state. These minimal "extra-territorial" acts do not directly relate to the alleged tortious interference claim or the conspiracy claim of Plaintiffs against these two defendants. Neither Blatz nor Campos took any action whatsoever to avail themselves of doing anything in the State of Missouri such that they would expect to be haled into this jurisdiction to defend their actions. Defendants Blatz and Campos' Motion to Quash is therefore granted.

## Motion to Stay and Compel Arbitration

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, provides a court with authority to compel arbitration where a party has refused to comply with an arbitration agreement. 9 U.S.C. § 4. In ruling on a motion to stay and compel arbitration, the Court must determine whether the particular claims at issue are subject to the agreement. See *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). In making this determination, the Court must take into account the strong policy

favoring arbitration as a method of settling disputes:

> [Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. . . The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. . .

*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 941, 74 L.Ed.2d 785 (1983), *superseded by statute on other grounds*.

Plaintiffs argue that they did not enter into an agreement to arbitrate with CES,[2] however, as Defendants establish, CES is the parent and sole shareholder of a signatory, Bio-Products, to the arbitration provisions in the Agreements. Just as Plaintiff CleanTech is not a signatory to the Agreements and has utilized the arbitration provisions of the Agreements with respect to its claims against Bio-Products' alleged wrongful termination of the License Agreement. Likewise, CES, as parent and sole shareholder of Bio-Products is entitled to utilize those same arbitration provisions with respect to the claims asserted against it by Plaintiffs herein. The issues involved herein specifically relate to the License Agreements and the resolution of those issues depends on the parties' agreement set forth in the Licence Agreement.

---

[2] Having determined that this Court lacks jurisdiction over Blatz and Campos, the issue with respect to arbitrability only applies therefore to Defendant CES.

> A nonsignatory can enforce an arbitration clause against a signatory to the agreement in several circumstances. One is when "the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." *MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir.1999) (quoting *Boyd v. Homes of Legend, Inc.,* 981 F.Supp. 1423, 1432 (M.D.Ala.1997)). Another is "when the signatory to a written agreement containing an arbitration clause 'must rely on the terms of the written agreement in asserting [its] claims' against the nonsignatory." *Id.* (quoting *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,* 10 F.3d 753, 757 (11th Cir.1993)). "When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate." *Id.* (internal quotations omitted).

*CD Partners, LLC v. Grizzle,* 424 F.3d 795, 798 (8th Cir. 2005).

Furthermore, "[a]rbitration must be compelled where a tort claim arises directly out of a dispute regarding the terms of the parties [sic] contractual relation, *see Coudert v. Paine Webber Jackson & Curtis*, 705 F.2d 78, 81-82 (2d Cir. 1983). (defamatory statements), or where the statements giving rise to a tort claim are integrally linked to the contractual relation between the parties, *McMahon v. RMS Electronics, Inc.*, 618 F.Supp. 189, 192[6] (S.D.N.Y. 1985)." *Greenword v. Sheffield*, 895 S.W.2d 169, 174-74 (Mo.App. S.D. 1995).

Under the *Greenwood* standard, this action is indivisibly connected to the contractual relation between the parties, and their assigns and therefore, arbitration

under the arbitration clauses of the License Agreements must be compelled. The Motion to Compel Arbitration and to Stay this matter is therefore granted.

Although Defendants seek to arbitrate in Alabama or California, that is an issue to be resolved by the arbitrator pursuant to the License Agreements. In light of the fact that the parties are already involved in Arbitration in St. Louis, it would appear that consolidation of the arbitrations is likely to be beneficial in all regards.

Because this matter is to be stayed until completion of arbitration, the Motion to Transfer is denied without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Motion to Quash for Lack of Personal Jurisdiction, [Doc. No. 6] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Motion to Dismiss or Transfer for Improper Venue and/or Forum Non Conveniens, [Doc. No. 6], is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that the Motion to Compel Arbitration and to Stay, [Doc. No. 15] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for costs, including

attorneys' fees, is **DENIED**.

Dated this 27th day of May, 2008.

                           HENRY EDWARD AUTREY
                        UNITED STATES DISTRICT JUDGE